HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DESIRE HUNTER, | |
|       Plaintiff, | CASE NO. C14-609RAJ |
|   v. | ORDER |
| THE COCA-COLA COMPANY, et al., | |
|       Defendants. | |

## I.  INTRODUCTION

This matter comes before the court on a motion to compel discovery from Plaintiff Desiré Hunter along with two motions to seal documents she submitted in support of her motion to compel.  For the reasons stated herein, the court GRANTS in part and DENIES in part all three motions.  Dkt. ## 20, 21, 28.  This order contains instructions to Defendants as to supplementing discovery and instructions to Ms. Hunter as to filing documents that need not be sealed.

## II.  BACKGROUND

Ms. Hunter has sued Coke,[1] her former employer, for employment discrimination and retaliation.  She invokes Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act, and the Washington Law Against Discrimination.  The court suggests no view on the merits of her claims.  For context, however, it describes her claims from her perspective.

---

[1] The Defendants are The Coca-Cola Company and two of its subsidiaries.  The court refers to them collectively as "Coke."

ORDER – 1

Ms. Hunter worked for Coke for 23 years.  In 2010, she was a vice-president responsible for managing Coke's relationship with Costco's worldwide stores.  She began reporting to Jay Toups in late 2010.  According to her, Mr. Toups discriminated against her because of her age and gender.  He also discriminated against other Coke employees because of their age, gender, and race.  Ms. Hunter complained about the discrimination to upper management on at least two occasions.  She contends that Coke did not properly investigate her complaints or remedy the wrongdoing she identified.  She also contends that her complaints led to retaliation.  Her initial complaint, in May 2011, led to the first negative performance review of her career.  Her second complaint, in March 2012, led to her termination, effective April or May 2013.  Coke contended that her termination was just one of a large number of terminations as part of a "reduction-in-force."  Ms. Hunter contends that Coke's explanation is pretextual.

Ms. Hunter's discovery motion raises three categories of disputes arising out of her first set of interrogatories and requests for production of documents ("RFPs"), which she served more than a year ago.  Those disputes are over discovery related to the reduction-in-force, disputes over discovery related to Coke's erasure of the hard drive on the computer Ms. Hunter used at work as well as deletion of her corporate email account, and disputes over the production of dozens (perhaps hundreds) of personnel files.[2]  The court now considers each category.

A.     Discovery About the Reduction-in-Force

There is no dispute that evidence about the reduction-in-force that Coke contends was the reason for Ms. Hunter's termination is relevant, and Coke offers no justification for its failure to produce more discovery.

---

[2] Ms. Hunter's motion raised a fourth dispute: that Coke had refused to verify its responses to her discovery requests.  *See* Fed. R. Civ. P. 33(c)(5) (requiring signature of party giving substantive response to interrogatories).  Even as of the date of its opposition to the motion to compel, Coke had not verified its interrogatory responses, although it promised to do so before the noting date of the motion.  Ms. Hunter did not mention the issue in her reply brief, and the court will not consider it further.  Coke is mistaken, however, if it believes that the court approves of its decision to withhold verification for months for no apparent reason.

ORDER – 2

Ms. Hunter points to Interrogatories 3 and 5 and RFPs I, L, and O as those encompassing her request for information about the reduction-in-force. Interrogatory 3 and RFP I seek much more information than just that pertaining to the reduction-in-force. The court ignores them in favor of more specific requests: Interrogatory 5 (asking for "all facts and circumstances relating to Plaintiff's termination and separation from employment, including but not limited to the alleged reasons for the decision, the individuals involved in the decision," and more) and RFPs L and O. RFP L asks for documents relevant to Defendants' response to Interrogatory 5, whereas RFP O asks for "all documents which relate to Defendants' alleged company-wide restructuring" in 2012 and 2013. RFP O is overbroad on its face; there are no doubt thousands of documents referring to the restructuring, the vast majority of which have nothing at all to do with Ms. Hunter or her claims. Nonetheless, the evidence reflects that the parties have narrowed the scope of RFP O. Interrogatory 5 and RFP L are not overbroad, and Coke has no justification for its failure to respond fully to them. Coke does not argue that its response to Interrogatory 5 was adequate. That response states only that it "terminated Plaintiff on May 4, 2013 consistent with a reduction in force for valid, non-discriminatory business related reasons."

In opposition to the motion to compel, Coke described the documents it produced as well as information it provided to Ms. Hunter informally. Coke apparently produced a spreadsheet listing all employees who lost their jobs in the reduction-in-force, a PowerPoint presentation explaining the process for the reduction-in-force, as well as the personnel file of the employee who was selected to fill Ms. Hunter's job. Coke also provided names of other employees who it considered for that job. It then stated that "prior to this motion being heard," it would "be serving supplemental written discovery responses" to Interrogatory 3 and RFPs L and O.

Coke's approach is not acceptable. It offers patently insufficient discovery responses, admits that it must supplement its discovery responses, and then withholds

ORDER – 3

1   those responses from Ms. Hunter and the court.  The court has no idea if Coke actually
2   served supplemental responses, and no idea if those responses are adequate.  If Coke
3   takes the same approach again in discovery, the court will sanction it.

4          Coke shall supplement discovery as to the reduction-in-force as follows:

5          1)  Coke shall provide, as part of a verified supplemental response to
6              Interrogatory 5, an explanation of who created the spreadsheet naming the
7              targets of the reduction-in-force, an explanation as to whether all individuals
8              listed on the spreadsheet were actually terminated as a result of the reduction-
9              in-force, an explanation in reasonable detail of the general process by which
10             employees were selected for termination, and a more specific explanation of
11             how Ms. Hunter was selected for termination.  In particular, Coke shall name
12             all people who participated in the decision to make Ms. Hunter a target of the
13             reduction-in-force.

14         2)  Coke shall produce all documents relevant to its supplemental response to
15             Interrogatory 3.  As part of supplemental responses to RFPs L and O, Coke
16             must identify all documents it produced in response to those requests (either in
17             supplemental production or earlier production), and it must explain, if it has
18             not already done so, where the documents came from and who created them.

19         3)  Coke shall produce the documents and supplementary discovery responses
20             required above no later than July 17, 2015.

21   **B.     Discovery as to the Erasure of Ms. Hunter's Hard Drive and Email Account**

22          Interrogatory 20 seeks information on steps Coke has taken to preserve
23   electronically stored information related to Ms. Hunter.  RFP FF seeks documents
24   describing those steps, including applicable record retention policies.  Those broad
25   discovery requests now focus, for purposes of this motion, on evidence related to Coke's
26   decision to erase the hard drive of the computer Ms. Hunter used at work and its decision
27   to delete her email account.  Coke does not contest Ms. Hunter's assertion that its counsel
28   ORDER – 4

has admitted that Coke took both steps.  Nonetheless, Coke's response to Interrogatory 20 does not mention either the hard drive or the email account, and its response to RFP FF suggests that it has yet to produce a single document.

Coke's response to this aspect of Ms. Hunter's motion to compel is to almost entirely ignore it.  It admits to erasing the hard drive, but declines to even address Ms. Hunter's email account.  Coke does not contend that it has produced so much as a single document in response to RFP FF.  It states that it will "try to track down the identity of who actually wiped Plaintiff's hard drive," and that it "anticipates being able to provide this information, or confirm that this information cannot be located, prior to the noting date for this motion."

Coke's approach is, again, unacceptable.  Its responses to Interrogatory 20 and RFP FF are useless.  Coke does not even attempt to justify its decision to withhold this plainly discoverable information.  Its promise to provide a single piece of information (the identity of the person who erased Ms. Hunter's hard drive) at an unspecified date in the future is inadequate.

The court orders as follows:

1) Coke shall provide, as part of a verified supplemental response to Interrogatory 20, at least a statement as to when it erased the hard drive and deleted the email account and an identification all persons responsible for both acts.  Coke must explain why it chose to erase the hard drive and the email account.  To the extent Coke contends that it erased the hard drive or the account in accordance with record retention or destruction policies, it shall describe the applicable content of those policies.

2) Coke shall produce all documents relevant to its supplemental response to Interrogatory 20, including but not limited to the applicable record retention policies.  It shall supplement its response to RFP FF with a description of every document it produces.

ORDER – 5

1        3)  Coke shall produce the documents and supplementary discovery responses

2            required above no later than July 17, 2015.

**C.  Discovery from Personnel Files**

Three of Ms. Hunter's RFPs seek "complete personnel file[s]" for a variety of employees. RFP G and H name specific employees. RFP G, or at least the portion of it still in dispute, seeks personnel files for seven employees who either received Ms. Hunter's complaints about Mr. Toups or investigated those complaints. RFP H seeks personnel files for eleven Coke employees who are either people who complained about Mr. Toups's conduct, people who provided information in investigations into that conduct, and women or people of color who worked for Mr. Toups. RFP A, however, is an appendage to Ms. Hunter's facially overbroad Interrogatory 1, which seeks the identity of every "employee who worked directly with [Ms. Hunter] in any capacity and at any time." Ms. Hunter does not begin to explain how the identity of every person she worked with in 23 years is relevant to a suit over events that begin in late 2010. She similarly offers no explanation of her need for the personnel files of every one of those employees, which is the subject of RFP A. Worse, Ms. Hunter asserts in her motion that Interrogatory 1 and RFP A are even broader than their text. She now seeks the identity of every employee who works or worked one or two levels below Mel Landis, Bonnie Wurzbacher, and Chris Lowe. Mr. Landis was Mr. Toups's immediate supervisor, and Ms. Hunter contends that he was complicit in Mr. Toups's retaliation and in the decision to terminate her. Ms. Wurzbacher and Chris Lowe were supervisors at the same level as Mr. Landis who supervised different business lines that Ms. Hunter alleges are similar to the one she worked in. In other words, Ms. Hunter has expanded an overbroad request for the identify of everyone she ever worked with to a request for the identity of everyone who worked in two business lines that she never worked in. Coke asserts that this amounts to more than 200 personnel files, although it offers no evidence for that assertion.

ORDER – 6

Coke has agreed to produce some information, although it is not clear whether it has already done so or when it will do so. It agreed to review the personnel files of the employees named in RFP G and H and produce any documents referring to Mr. Toups or Ms. Hunter. It agreed to produce personnel files for Mr. Toups and four other people who supervised Ms. Hunter at various times. It also agreed to produce the personnel files for all employees who reported directly to Mr. Toups over the past five years.

As to most of these requests, Ms. Hunter has established no basis for disclosure of any employee's entire personnel file. Take, for example, the employees who received Ms. Hunter's complaints and investigated them. Ms. Hunter contends that she is entitled to know "whether these individuals had reviewed discrimination and/or retaliation complaints prior to hers, whether they had ever been disciplined, and how they were performing." She also contends that she is entitled to review their compensation, in order to discover whether they are biased in favor of Coke. The court assumes, purely for the sake of argument, that the information she seeks is discoverable. Even so, she is not entitled to review an employee's entire personnel file to obtain that information. The same is true of her other requests. She seeks personnel files where narrower disclosures will suffice.

Ms. Hunter has not established a basis to compel discovery of the personnel files of employees in other business lines. She explains that all of these employees are "comparators," and she is entitled to review their personnel files to determine if they received better treatment than her despite being similarly situated. She has not established an adequate foundation for the premise that these employees were similarly situated. They worked for different supervisors, and those supervisors in turn worked for different supervisors. It is possible, for example, that every employee in Ms. Wurzbacher's business line received better treatment than employees (like Ms. Hunter) in Mr. Landis's business line for reasons that have nothing to do with discrimination. Without a better reason to believe that discovery into the employment records of

ORDER – 7

employees in other business lines is likely to lead to the discovery of admissible evidence, the court will not permit it.

As to employees in Ms. Hunter's business line (the line of business under Mr. Landis's supervision), the comparator relationship is much clearer. Coke has already agreed that information about employees under Mr. Toups's supervision is relevant, and it could not argue otherwise, given Ms. Hunter's claims. But information about employees working under Mr. Landis is also relevant. He was responsible for addressing complaints about Mr. Toups, and the manner in which he addressed complaints or other concerns about other employees who worked beneath him is relevant. Similarly, the information would reveal whether Mr. Landis did (or did not) retaliate against (or condone retaliation against) employees who complained.

As to the employees who Ms. Hunter identified in RFP H, the court will permit discovery of their entire personnel files. Information about those employees (people who complained about Mr. Toups, people who gave information in investigations into those complaints, and members of protected classes who worked for Mr. Toups) is highly likely to be relevant. Everything from their compensation to their disciplinary records has at least the potential to shed light on Ms. Hunter's claims. Although disclosure of their entire personnel files is potentially overinclusive, the risk of depriving Ms. Hunter of relevant information with a more targeted disclosure order is too great.[3]

---

[3] Ms. Hunter claims that these personnel files "are reasonably likely to contain evidence that Defendant has a 'pattern and practice' of discriminating and retaliating based on protected status." The court strongly disagrees. The "Defendant" here is Coke and a few of its subsidiaries. There is no allegation that Coke has a pattern and practice of discrimination. Ms. Hunter's suit is based on the assertion that a single manager discriminated, and that he and perhaps his immediate supervisors retaliated against her when she complained of discrimination. Evidence bearing on those people's motivations is relevant to her suit. Evidence of a "pattern and practice" of discrimination at Coke is not at issue. The court observes that Ms. Hunter's counsel has established a "pattern and practice" of using the phrase "pattern and practice" as a justification for obtaining discovery far afield from the allegations of a plaintiff's complaint. This court has rejected that approach twice before, and rejects it again here. *See Acton v. Target Corp.*, No. C08-1149RAJ, 2009 U.S. Dist. LEXIS 104436, at *5-6 (W.D. Wash. Oct. 16, 2009); *Walech v. Target Corp.*, No. C11-254RAJ, 2012 U.S. Dist. LEXIS 44119, at *18-20 (W.D. Wash. Mar. 28, 2012).

ORDER – 8

As to the employees who received or investigated Ms. Hunter's complaint, Ms. Hunter falls well short of establishing the potential relevance of their entire personnel files. She is entitled to information directly related to the investigation of her complaints against Mr. Toups, any other complaints against him, and any other information bearing on those employees' evaluations of Mr. Toups. She is also entitled to information about what training those employees received in evaluating workplace complaints, as well as any policies governing those investigations. Coke need not disclose those employees' compensation, although to the extent Ms. Hunter chooses to depose any of them, she is welcome to inquire into their compensation to probe her claims of bias. Those claims seem quite weak, because any employee who investigates workplace complaint receives compensation from the company. Absent evidence that an employee's compensation was tied to the outcome of an investigation, any inference of bias based on compensation requires a long logical leap.

The court observes that some of the information the court has identified as discoverable in the paragraph above is likely not contained within any employee's personnel file. RFP G seeks only information contained within personnel files. To the extent Ms. Hunter wants information about other issues relevant to these investigations, she will have to obtain it in follow-up discovery.

The court orders as follows:

1) Coke shall provide, as part of a verified supplemental response to Interrogatory 1, the identity of all persons who worked one or two levels below Mr. Landis from 2009 through 2014. That identification shall include the race, age, and gender of each of those persons.

2) Coke shall supplement its response to RFP A by providing documents from the personnel files of employees identified in its supplemental response to Interrogatory 1 revealing those employees' compensation, their performance reviews, any complaints they have made about other employees, and Coke's

ORDER – 9

response to those complaints.  Coke may, if it chooses, disclose entire
personnel files rather than attempting to parse out the documents the court has
just described.

3) To the extent it has not done so already, Coke shall produce complete
   personnel files for the persons identified in RFP H.

4) To the extent it has not done so already, Coke shall produce all documents
   from the personnel files of the individuals named in RFP G that relate to
   complaints against Mr. Toups, investigation of those complaints, and
   information on the evaluation of Mr. Toups.  To the extent those personnel
   files contain documents about training those employees received in
   investigating workplace complaints or policies applicable to those
   investigations, Coke shall produce those as well.  Coke may, if it chooses,
   disclose entire personnel files rather than attempting to parse out the
   documents the court has just described.

5) Coke shall produce the documents and supplementary discovery responses
   required above no later than July 17, 2015.

Before moving to Ms. Hunter's motions to seal, the court notes that the only
reason that it did not require Coke to pay the bulk of Ms. Hunter's attorney fees for
bringing this motion is that Ms. Hunter did not request those fees.  The court has
considered awarding attorney fees and imposing other sanctions sua sponte.  Although
Coke had a legitimate basis to narrow some of Ms. Hunter's discovery requests,
particularly her overbroad requests for personnel files, the record reflects that Coke too
often withheld plainly discoverable documents and information for no apparent reason.  It
refused, even after Ms. Hunter filed this motion, to satisfy its basic obligation to verify its
interrogatory responses.  Coke's conduct suggests a motive to obstruct and delay
discovery.  If Coke takes the same approach in response to other discovery requests, the
court will award attorney fees at a minimum, and may consider other sanctions.

ORDER – 10

**D.    Motions to Seal**

The parties have entered a protective order that allows each of them to designate documents produced during discovery as confidential.  Ms. Hunter filed several documents that Coke deemed confidential in support of her motion to compel.  She then filed motions to keep these documents under seal purely to respect the protective order, leaving it to Coke to overcome the "strong presumption of public access to the court's files."  Local Rules W.D. Wash. LCR 7(g).  Coke has conceded that several of the documents need not be sealed.

What remains of the motions to seal are disputes over three documents.[4]  One consists of four pages of handwritten notes reflecting someone's investigation into a complaint that Mr. Toups sexually assaulted another Coke employee.  Another is a few pages of typewritten notes relating to Ms. Hunter's concerns with Mr. Toups.  The third is the 20-page spreadsheet that Coke contends is the list of all employees terminated in the reduction-in-force that allegedly led to Ms. Hunter's termination.

Each of these documents reveals sensitive information about Coke employees who are not parties to this suit.  The spreadsheet, in particular, reveals sensitive information about employees who have nothing at all to do with this lawsuit.  The court has already revealed, in this order, any relevant information it gleaned from those documents.  As to two of them, the court gleaned no relevant information at all.  The court declines to make these documents public when they played either little or no role in the court's consideration of the motion before it.  As Coke points out, the presumption of public access to the court's docket yields more readily in connection with a discovery motion than with a dispositive motion.  *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012).  The court suggests no opinion on whether it

---

[4] As to one of the documents, Coke has no objection to its unsealing, but contends that the court should strike it because it is not relevant.  The court will not strike documents merely because they are not relevant.

ORDER – 11

would be appropriate to seal those documents if they were submitted in support of a dispositive motion, or any motion in which they played a more central role.

Ms. Hunter filed her sealed documents in two bulk submissions (Dkt. ## 23, 31) that now contain documents that will remain sealed as well as documents that should be unsealed. The court's electronic filing system does not permit it to unseal documents on a page-by-page basis. Accordingly, Ms. Hunter must refile the documents that will no longer be sealed.

The court orders as follows:

1) No later than July 10, 2015, Ms. Hunter shall file a single praecipe entitled "Documents Unsealed Per June 23, 2015 Order." Ms. Hunter shall attach the following documents to that praecipe, such that each is a separate sub-entry under the docket entry for the praecipe: Exhibit K to the Declaration of Richard Goldsworthy (filed without sealed documents at Dkt. # 22), and Exhibits N and P to the Supplemental Declaration of Richard Goldsworthy (filed without sealed documents at Dkt. # 30).

2) If either party files documents under seal in the future, they shall do so such that each sealed document is a standalone docket entry or sub-entry. That will permit the court to unseal documents, if necessary, without requiring the parties to refile documents.

### III.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part all three of Ms. Hunter's motions. Dkt. ## 20, 21, 28. The parties shall comply with the orders stated above.

DATED this 23rd day of June, 2015.

Richard A Jones

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 12